783 So.2d 1276 (2001)
Archie BOYETTE
v.
UNITED SERVICES AUTOMOBILE ASSOC., et al.
No. 2000-C-1918.
Supreme Court of Louisiana.
April 3, 2001.
*1277 Paul M. Lafleur, Alexandria, Counsel for Applicant.
W. Bernard Kramer, Alexandria, Counsel for Respondent.
TRAYLOR, Justice[*]
This case arises from a May 3, 1995, automobile accident in which Plaintiffs vehicle was rear-ended. At trial, the jury found that plaintiff sustained neck and back injuries as a result of the accident and awarded him $50,000 in general damages, but unanimously found that plaintiff suffered no lost wages, either past or future. Because the jury verdict did not exceed the amount of the underlying USAA liability policy, the trial court rendered judgment in favor of plaintiffs uninsured motorist insurer, State Farm, and dismissed plaintiff's suit with prejudice. The court of appeal affirmed the trial court *1278 award of general damages, reversed with regard to court costs, and amended the judgment in part, awarding damages for lost wages. Boyette v. United Servs. Auto. Assoc., 99-1755 (La.App. 3 Cir. 4/12/00), 760 So.2d 492. We granted this writ to determine whether the jury erred in declining to award plaintiff past and future lost wages. Finding the jury did not err, we reverse and set aside the judgment of the court of appeal, and reinstate the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
On May 3, 1995, the plaintiff, Archie Boyette, was stopped at a traffic signal in Leesville, Louisiana when his truck was rear-ended by a van driven by Lisa Wyrick. At the time of the accident, Boyette was employed by Scott Construction Equipment Company ("Scott") as an equipment inspector. After the accident, Boyette missed approximately three days due to headaches, then continued working for Scott until November 20, 1995, when his job was eliminated.
In March 1996, Boyette filed suit against Wyrick, her insurer, United Services Automobile Association ("USAA"), and against his uninsured motorist insurer ("UM"), State Farm Mutual Automobile Insurance Company ("State Farm"). In addition, Scott intervened in the suit, seeking to recover workers' compensation benefits it paid to plaintiff as a result of the accident. Scott, USAA, and Wyrick later settled with plaintiff, and the case proceeded to a jury trial against the sole remaining defendant, State Farm.
Following trial, the jury found that plaintiff was injured as a result of the accident in question, and awarded him $50,000 in general damages. However, the jury unanimously found that plaintiff suffered no past or future lost wages. Because the jury verdict did not exceed the amount of the underlying USAA liability policy, the trial court ultimately rendered judgment in favor of State Farm and dismissed plaintiff's suit with prejudice.
Plaintiff appealed the trial court's judgment. The court of appeal affirmed the general damage award, but found that plaintiff was permanently and totally disabled from working. Boyette v. United Servs. Auto. Assoc., 99-1755 (La.App. 3 Cir. 4/12/00), 760 So.2d 492. Consequently, the court of appeal awarded plaintiff lost wages for the amount he would have earned from the time his job was abolished until his sixty-fifth birthday, stating:
[T]he jury erred in not awarding Boyette any damages for lost wages. Since the evidence is undisputed that Boyette would have earned $81,921.05 through the date of the trial, and there is an absence of evidence indicating that he would not have continued to work absent his injury, we find that the lowest amount the jury could have awarded for past lost wages was $81,921.05. The evidence as to future lost wages was also undisputed, thus, we find that the lowest amount the jury could have awarded for future lost wages was $45,207.91, for a total award of $127,128.96. [emphasis added]
Id. The court of appeal reversed the portion of the trial court's judgment casting plaintiff with all court costs, and cast all costs to State Farm.
State Farm now appeals the judgment of the court of appeals to this court. We granted State Farm's writ application to consider the correctness of the appellate court's decision. After considering the *1279 record viewed in its entirety in the present case, we conclude that the jury did not err in declining to award plaintiff lost wages and that the court of appeal failed to properly apply the appellate standard of review in this matter.

LAW AND DISCUSSION
To recover for actual wage loss, a plaintiff must prove that he would have been earning wages but for the accident in question. See, Rhodes v. State Through Dep't of Transp. & Dev., 94 1758 (La.App. 1 Cir. 12/20/96), 684 So.2d 1134, writ not considered, 97-0242 (La.2/7/97), 688 So.2d 487; Hunt v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 522 So.2d 1144, 1152 (La.App. 2 Cir.1988). In other words, it is the plaintiffs burden to prove past lost earnings and the length of time missed from work due to the accident. See, ANMAC Foundation, Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951, 956 (La.App. 3 Cir.1992). We now turn to the evidence on the record regarding plaintiffs claim for lost wages.
The court of appeal found noteworthy the testimony of Dr. Goodin, who opined that plaintiff was permanently and totally disabled from working. However, the court of appeal acknowledged that Dr. Goodin also stated that plaintiff exaggerated his pain due to his emotional problems and personality type. Next, the court discussed the testimony of Dr. Beurlot which provided that plaintiff was not able to drive or sit for long periods of time, had trouble entering and exiting the truck, and handling equipment. He opined that plaintiff was disabled as of the date he examined him, November 28, 1995. Beurlot also stated that plaintiff's mental condition affected his physical condition because plaintiff's response to injury was in excess of what was normally to be expected but did not believe plaintiff was malingering. Drs. Fresh and Katz testified that plaintiffs physical condition was aggravated by his depression or psychological condition. However, we note the court of appeal only presented a portion of the evidence regarding plaintiffs condition as it related to his lost wages and was silent regarding the considerable evidence weighing against the plaintiff.
First, the jury heard an abundance of testimony which reasonably shows that plaintiff failed to sustain his burden of proof that he would have been earning wages but for the accident in question. Next, the jury learned that plaintiff continued to work from the date of the accident until the time when his position was eliminated by his employer. Plaintiff missed only three days of work "to nurse headaches." Additionally, plaintiff readily admitted that at the time his job was abolished he did not feel disabled and had no plans to stop working. Furthermore, plaintiff's four doctors could show no objective or physical findings to explain plaintiff's alleged pain, nor could they link this alleged pain to the accident. The doctors could only base their diagnoses on plaintiff's subjective complaints of pain. These doctors unanimously felt plaintiff was either magnifying his symptoms, exaggerating them, or being theatrical.
Specifically, Drs. Fresh and Beurlot linked plaintiff's problems to degenerative, age-related conditions and not to the accident. Drs. Beurlot and Goodin noted that plaintiff's alcohol abuse worsened his physical and mental condition and rendered medical treatment useless. Dr. Katz agreed that plaintiffs condition could not be linked to the accident and opined that *1280 plaintiff would not recover because he was not motivated or willing to do anything to assist his recovery. Objective tests conducted on plaintiff indicated that he could perform his previous job if it were still available and that he was magnifying his symptoms.
Based on these facts adduced at trial, not only do we find that the court of appeal erred in favoring its version of the evidence above that of the jury, we also find that the facts of this case do not bear out that the plaintiff would have earned $127,128.96 but for his injury. The court of appeal found that plaintiff satisfied his burden of proof because "there is an absence of evidence indicating that he would not have continued to work absent his injury." In so stating, the court of appeal did not place the proper burden on plaintiff to positively prove his case. We agree with the courts of appeal, and hold that in order to be awarded lost wages, a plaintiff must prove positively that he would have been earning the wages but for the accident in question. See, Rhodes v. State Through Dep't of Transp. & Dev., 684 So.2d 1134; Hunt v. Board of Supervisors of Louisiana State Univ. and Agricultural and Mechanical College, 522 So.2d 1144; ANMAC Foundation, Inc. v. St. Patrick Hospital of Lake Charles, 594 So.2d 951, 956 (La.App. 3 Cir.1992).
He cannot rest on a lack of proof that he would not be earning wages as the court of appeal held. The court of appeal's finding erroneously switched the burden away from the plaintiff. There is no serious dispute that plaintiff's job was eliminated by his employer for reasons completely unrelated to his injuries and there is no objective proof that plaintiff could not continue to work due to the accident. Therefore, plaintiff did not sufficiently establish his lost wage claim.
Upon review of the entire record, we find ample testimony and evidence upon which the jury could have concluded that plaintiff suffered no lost wages due to the injury. Although there is evidence on both sides, it is the sole province of the jury to view the evidence and determine which version of the facts are more trustworthy. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). It was within the jury's discretion as factfinder to determine the facts herein and the court of appeal simply failed to give due deference to the jury. Consequently, we find that the court of appeal erred in reversing the lost wages portion of the trial court judgment.

DECREE
For the reasons assigned, we vacate the judgment of the court of appeal awarding past and future lost wages. The verdict of the jury finding no past or future lost wages is reinstated. The judgement of the trial court assessing all trial costs to plaintiff is reinstated. All cost of this appeal are assessed to plaintiff.
CALOGERO, C.J., concurs in part, dissents in part and assigns reasons.
KNOLL, J., concurs in part and dissents in part for the reasons assigned by Chief Justice CALOGERO.
CALOGERO, Chief Justice, concurs in part, dissents in part, and assigns reasons.
I concur in part in the judgment. The court of appeal erred in awarding damages in excess of State Farm's policy limits. Thus, I would reduce the plaintiff's award for past and future lost wages from $127,128.96 to $100,000.00.
Otherwise, I dissent from the majority's conclusion that the court of appeal "did not *1281 place the proper burden of proof on plaintiff to positively prove [sic] his case." Ante, p. 1280. In fact, at the outset of its rather lengthy and detailed analysis, the court of appeal explicitly stated, "`The burden of proving a loss of income is on the plaintiff.'" Boyette v. United Services Automobile Assoc., 99-1755, p. 6 (La.App. 3 Cir. 4/12/00), 760 So.2d 492, 496 (quoting Sengsouly v. Allstate Ins. Co., 99-22 (La. App. 3 Cir. 6/9/99), 744 So.2d 649, writ denied, 99-2526 (La.11/19/99), 749 So.2d 677).
Furthermore, the court of appeal clearly held the plaintiff to the proper burden of proof. The majority focuses inordinately on the appellate court's statement that "there is an absence of evidence indicating that he would not have continued to work absent his injury." However, this statement is taken out of context, and the majority completely ignores the appellate court's preceding review of the evidence, upon which it concluded that the jury had erred in not awarding the plaintiff any damages for lost wages.
Though it is true that the plaintiff continued to work off and on after the May 1995 accident until his position with his employer was eliminated, the plaintiff, as the court of appeal noted, testified that he could not have continued that type of work, which involved inspecting heavy construction equipment and forestry equipment on location, after the position was eliminated on November 20, 1995. The plaintiff explained that his condition was progressively worsening, that he was experiencing pain, that he was unable to drive long distances, that he was having severe headaches resulting in missed days from work, and that he had fallen numerous times when his legs collapsed while trying to perform his job for his employer. The plaintiff further explained that he did not seek unemployment benefits because he could not certify that he was able to work.
The majority's apparent conclusion to the contrary, the plaintiff's testimony was supported by the other evidence reviewed by the appellate court. Dr. Goodin, a psychiatrist, specifically testified that the plaintiff was permanently and totally disabled, and explained that the plaintiff's impaired concentration was the result of depression from chronic pain caused by the May 1995 accident. Dr. Beurlot, a specialist in physical medicine and rehabilitation, also testified that the plaintiff was, in his opinion, disabled on November 28, 1995, just eight days after the plaintiff's employer downsized and made his position redundant. Dr. Beurlot opined that the plaintiffs mental condition was affecting his physical condition. Dr. Fresh, a neurosurgeon who had performed two cervical fusions on the plaintiff in 1992 and who had diagnosed the plaintiff as suffering from cervical and lumbar strain as the result of the 1995 accident, similarly testified that the plaintiff's physical condition was aggravated by his depression or psychological changes. Dr. Katz, a specialist in pain management, also believed that the plaintiff's psychological injury was a cause of the plaintiff's pain and was hindering his recovery. Finally, the appellate court had previously noted the testimony of the plaintiff's wife, who related that the plaintiff could not drive, that he could not walk great distances, that he could not walk on uneven terrain, that he could not perform activities such as grocery shopping or working in the yard, and that he could not dress himself without assistance because he was unable to bend. As the court of appeal certainly observed, an observation the majority seizes upon, none of this evidence was contradicted by any witness or other evidence.
*1282 Additionally, other evidence was introduced regarding the cause of the plaintiff's continuing pain and degenerating physical condition. That the plaintiff, who had an obsessive-compulsive disorder, had actually suffered a painful physical injury that resulted in depression, which in turn hindered his ability to recover from the physical injury, is not disputed by any witness or evidence. The court of appeal understood that the primary issue at trial was whether the plaintiff was actually suffering from a deteriorating mental and physical condition that prevented him from working. Again, the evidence on that issue is not contradicted.
Given this evidence, which is only a portion of the evidence reviewed by the court of appeal, the jury's decision not to award damages for lost income is without a factual basis in the record. The court of appeal was therefore justified in finding that the jury had erred and that the plaintiff had in fact carried his burden of proving that he was unable to work after his job was eliminated in November 1995 but for the accident in May 1995.
For these reasons, I respectfully dissent in part from the majority's judgment.
NOTES
[*] James C. Gulotta, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.